# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

SONIA INGRID GIZA *et al.*,
    *Petitioners*,

v.

KEVIN MCALEENAN *et al.*,
    *Respondents*.

No. 3:18-cv-00842 (JAM)

## RULING ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Sonia and Adam Giza have filed a petition for review of the decision of the Board of

Immigration Appeals ("BIA") to deny Sonia's I-130 petition. The Gizas filed this complaint

under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, alleging that the agency's

decision was arbitrary and capricious.[1] The parties have cross-moved for summary judgment. I

will grant the Government's motion for summary judgment and deny the Gizas' cross-motion for

the reasons set forth below.

### BACKGROUND

Adam Giza is a Polish citizen who first arrived in the United States in 2004 on a visitor

visa with his then-wife, Bozena Giza, and their minor son. Doc. #24-1 at 2. He has overstayed

his visa and remained in the country since then. *Ibid.* Adam and Bozena divorced in 2006. *Id.* at

3. Around June of 2009, U.S. Immigration and Customs Enforcement commenced removal

proceedings against Adam. Doc. #27-1 at 7. While these proceedings were pending, he married

Sonia Giza in May 2010. *Ibid.*

---

[1] The complaint names as a defendant Kristjen Nielsen who was the Secretary of Homeland Security. On April 11, 2019, Kevin McAleenan became the Acting Secretary. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. *See* Fed. R. Civ. P. 25(d). The Clerk of Court shall amend the caption in this case.

Under the Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.*, a non-citizen who seeks to obtain an immigration visa based on his relationship with a United States citizen must have the citizen file an I-130 petition on his behalf. An I-130 petition "in and of itself does not confer legal status on an individual, but if the petition is granted, the beneficiary becomes eligible to apply for a visa or adjustment of status to lawful permanent resident." *Maldonado v. Holder*, 2015 WL 1097364, at *1 (D. Conn. 2015) (citing 8 U.S.C. §§ 1154, 1255). When "the beneficiary and petitioner are married after the beneficiary is already in removal proceedings, the beneficiary must reside outside the United States for a two-year period beginning after the date of the marriage, unless the beneficiary can establish 'by clear and convincing evidence to the satisfaction of the Attorney General' that he qualifies for the bona fide marriage exemption: that is, that the marriage was entered into in good faith … and the marriage was not entered into for the purpose of procuring the [beneficiary's] admission ….'" *Ibid.* (quoting 8 U.S.C. § 1255(e)(3)).

Sonia's first I-130 petition on Adam's behalf was denied by the U.S. Customs and Immigration Service (USCIS) on August 3, 2011. Doc. #27-1 at 7. The denial "cited discrepant answers during [Sonia's] interview, an investigative field visit, an unconvincing response to the information obtained from the field visit, and a lack of details in various letters seeking to substantiate the marriage." *Ibid.*

Soon after the BIA affirmed the denial on appeal, Sonia filed a second I-130 petition on September 28, 2012. *Ibid*. Several years later, USCIS issued a Notice of Intent to Deny the petition on February 22, 2017, advising Sonia that the evidence supporting the petition was insufficient to establish that her marriage to Adam was entered into in good faith, and providing an opportunity to submit additional evidence on this point. *Ibid.* After Sonia provided more

documentation, *see id.* at 7-8, USCIS denied the petition on April 12, 2017, concluding that the Gizas had not established by clear and convincing evidence that their marriage was bona fide and not commenced for the purposes of circumventing immigration laws. *Id.* at 6. The notice of decision from USCIS discussed why it did not conclude that the supplemental information furnished by Sonia was persuasive. It cited, for example, evidence from a field visit to Sonia's landlord who was unwilling to confirm that Adam was a co-tenant, that he was included on the lease, or that he resided with Sonia. *Id.* at 8. "Although the beneficiary may come and go at unusual hours as you claim, it is reasonable to conclude that your landlord, who occupies the other side of the two-family residence and who shares walls with you, would be able to speak credibly to the beneficiary's presence at the property." *Ibid.* The USCIS additionally cited evidence from field visit interviews with neighbors of Bozena to suggest that Adam was living with Bozena. *Id.* at 9.

Plaintiffs appealed to the Board of Immigration Appeals, and the BIA dismissed the appeal by decision on April 20, 2018. *Id.* at 4. It summarized the evidence relied on by the USCIS and why it did not find that the Gizas had carried their burden to show that the marriage was entered into in good faith. *Id.* at 4-5.

Plaintiffs later filed this case in federal court, alleging that the decision to deny the I-130 petition was arbitrary and capricious because the agency did not adequately consider the rebuttal evidence they submitted in response to the Notice of Intent to Deny and instead based its decision on "impermissible speculation and conjecture." Doc. #26 at 9, 12. The parties have filed cross-motions for summary judgment. Docs. #24, 26.

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve closely contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 572 U.S. 650, 656-57 (2014) (*per curiam*); *Pollard v. N.Y. Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

As a threshold matter, I consider whether the Court has jurisdiction over the agency's decision. Federal courts do not generally have jurisdiction over any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii). As noted above, the marriage fraud provision at issue in this case allows for an exception only if the beneficiary "establishes by clear and convincing evidence *to the satisfaction of the Attorney General* that the marriage was entered into in good faith." 8 U.S.C. § 1255(e)(3) (emphasis added).

Other courts have previously ruled at the Government's behest that the statutory requirement that the evidence be "to the satisfaction of the Attorney General" implied that the Attorney General retained discretion of the type that is unreviewable under § 1252(a)(2)(B)(ii). *See Barenboy v. Sec'y, U.S. Dep't of Homeland Sec.*, 411 F. App'x 512, 516 (3d Cir. 2010); *Poh*

*v. Nielsen*, 2019 WL 1002596, at *3 (D. Md. 2019); *Maldonado*, 2015 WL 1097364, at *3. Here, however, the Government expressly disclaimed its prior position in these cases after I raised this issue *sua sponte*. Doc. #31. In light of the Government's reasons for its change of position and in light of the statutory language that requires a finding by the Attorney General of a specific fact ("good faith") by clear and convincing evidence, I conclude that—notwithstanding the statute's reference to the "satisfaction of the Attorney General"—Congress did not intend to leave this particular determination to the general and non-reviewable discretion of the Attorney General. *See also* 8 U.S.C. § 1154(b) (requiring approval of I-130 petition "if [the agency] determines that the facts stated in the petition are true and that the alien in behalf of whom the petition is made is an immediate relative…."); *Ruiz v. Mukasey*, 552 F.3d 269, 275-76 (2d Cir. 2009) (holding that § 1252(a)(2)(B)(ii) does not preclude judicial review of denial of I-130 petition pursuant to § 1154(b)).

That brings me to the merits of the Gizas' challenge. In a case like this one that challenges the decision of an administrative agency, the Court's review is ordinarily limited to the administrative record. *See* 5 U.S.C. § 706; *Camp v. Pitts*, 411 U.S. 138, 142 (1973). And my task is not to second-guess the agency but solely to determine if the agency acted no less than arbitrarily or capriciously in reaching its determination. *See Simko v. Bd. of Immigration App.*, 156 F. Supp. 3d 300, 308 (D. Conn. 2015) (explaining why the arbitrary-and-capricious standard applies to a court's reviews of the denial of a I-130 petition). This is a deferential standard: I must uphold an agency's decision "so long as the agency examines the relevant data and has set out a satisfactory explanation including a rational connection between the facts found and the choice made." *Kumar v. Dir., U.S. Citizenship & Immigration Servs.*, 735 F. App'x 13, 14 (2d Cir. 2018) (citing *Karpova v. Snow*, 497 F.3d 262, 266 (2d Cir. 2007)). I cannot substitute my

judgment for that of the agency and may only set aside the decision if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Cnty. of Westchester v. United States HUD*, 802 F.3d 413, 431 (2d Cir. 2015) (internal citations omitted).

Because Adam and Sonia were married after Adam was already in removal proceedings, and because Adam did not reside outside the United States for a two-year period after their marriage, plaintiffs had the burden of establishing by clear and convincing evidence that their marriage was entered into in good faith and not for the purpose of circumventing immigration laws. *See* 8 U.S.C. § 1255(e)(3). Clear and convincing evidence is a standard of proof which requires more than the preponderance of evidence standard applied in most civil cases, but less than the beyond a reasonable doubt standard used in criminal proceedings. *See Addington v. Texas*, 441 U.S. 418, 425 (1979). The BIA's decision makes clear that the denial of the I-130 was based on USCIS's finding—and the Board's agreement with that finding—that the good faith marriage exception does not apply because "the record does not demonstrate that the petitioner met her burden, by clear and convincing evidence, to establish that her marriage to the beneficiary was entered in good faith." Doc. #27-1 at 4.

Having reviewed the record, I conclude that the agency's determination that plaintiffs did not qualify for the good faith marriage exception was not arbitrary and capricious. The agency acknowledged that plaintiffs had submitted "voluminous documentation" in support of their second petition after the first had been denied and again when the agency informed them of its intent to deny the second petition. Doc. #14-1 at 88; *see also* Doc. #24-1 at 9-12 (listing the documents included in the second petition); Doc. #27-1 at 8 (listing documents submitted in

response to the Notice of Intent to Deny). But the agency concluded that "when weighed against the adverse information cited in the Notice of Intent to Deny [the petition] as well as in the denial of your first petition, the evidence on record does not overcome the derogatory information, nor does it rise to the clear and convincing standard." Doc. #14-1 at 82. As one example of negative or ambiguous evidence developed during the first investigation, plaintiffs had given conflicting answers when asked whether they had showered the morning of the interview, who selected the engagement ring, and whether utilities were included with their rent. Doc. #14-3 at 160-163.

Field visits conducted in conjunction with the second petition raised further unanswered questions, leading USCIS to question whether Adam and Sonia even lived together. For example, two of Sonia's neighbors, including one who was also her landlord, were not able to confirm that Adam lived with Sonia, and the investigators did not see any of Adam's belongings in Sonia's apartment or any sign of him other than one photograph. Doc. #14-1 at 90. In contrast, when investigators showed Bozena's neighbors photos of Adam and of Bozena's second husband, a U.S. citizen, the neighbors said they did not recognize the second husband but that Adam still lived with Bozena—the same conclusion USCIS had reached when investigating a 2009 I-130 petition that Bozena's second husband had filed on her behalf. *Id.* at 89-90. The leasing office representative interviewed by the investigators also reported that Bozena's citizen husband was not associated with Bozena's lease but with another unit in the complex. *Ibid.* Although the agency noted that Adam's explanation was "plausible" that Bozena's neighbors mistakenly thought he lived with her only because he spent time there taking care of his children, it was not convinced by the explanation in view that the neighbors could not identify Bozena's current alleged husband as a resident of the apartment. Doc. #14-1 at 71; *see also ibid.* (noting

discrepancies in the record regarding Sonia's social media and solo vacation on one-year anniversary of marriage).

The agency did not act arbitrarily or capriciously. It gathered significant evidence to support its finding, allowed and considered evidence from plaintiffs, and carefully explained the reasons for its decision. It was not arbitrary or capricious on this record for the agency to conclude that plaintiffs did not prove by clear and convincing evidence that they entered into a good faith marriage.

### CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Doc. #24) is GRANTED, and plaintiffs' motion for summary judgment (Doc. #26) is DENIED. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 8th day of August 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge